UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS INSTRUMENTS INCORPORATED, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:09-CV-0822-G |
| CITIGROUP GLOBAL MARKETS, INC., ET AL., | ) ) ) | **ECF** |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff, Texas Instruments Incorporated ("Texas Instruments" or "the plaintiff"), to remand this case to the state court from which it was removed (docket entry 13). For the reasons discussed below, the motion is granted, and the defendants' motions to sever (docket entries 6, 24, and 26) are denied as moot.

## I. BACKGROUND

### A. Factual Background

This case arises out of the plaintiff's purchase of Auction Rate Securities ("ARS") from the three defendants, Citigroup Global Markets, Inc. ("CGMI"), BNY Capital Markets, Inc. ("BNY"), and Morgan Stanley and Co., Inc. ("Morgan

Stanley").  Notice of Removal ("Notice"), Exhibit 5, Plaintiff's Original Petition

("Petition") at 3-4.  All three defendants are securities broker-dealers which provide

underwriting services to issuers of ARS and then market those ARS to customers such

as Texas Instruments.  *Id.* at 3.  ARS are nominally long-term bonds with variable

interest rates or dividend yields that are periodically reset through frequently held

auctions.  *Id*.  During these auctions, each participating broker-dealer submits orders

to the auction agent on behalf of its customer for the lowest interest rate that the

customer is willing to accept.  *Id*. at 4.  An auction fails when there are not enough

bids to cover all securities for sale at the auction.  *Id*.  When this happens, no current

securities holders can sell their ARS.  *Id*.

Texas Instruments contends the defendants misrepresented the nature of ARS

and secretly manipulated the market for ARS.  *Id*.  Specifically, Texas Instruments

alleges that the defendants marketed ARS to Texas Instruments as a highly liquid

alternative to other short-term investments and represented that ARS posed little risk

because they could be liquidated on the next auction date.  *Id*.  According to Texas

Instruments, the defendants downplayed the possibility of auction failure and did not

fully disclose other key factors.  *Id*. at 5.  During the fall of 2007, Texas Instruments

alleges, the defendants did not alert Texas Instruments to the increasing risk of

auction failure.  *Id*. at 10.  By February 13, 2008, virtually all major broker-dealers,

including the defendants, had withdrawn their artificial support of the ARS market,

- 2 -

and almost 90% of the ARS auctions failed.  *Id.*  Texas Instruments now finds itself

unable to liquidate approximately five-hundred twenty-four million dollars

($524,000,000.00) of the ARS it purchased from the three defendants.  *Id*.

## B.  Procedural Background

Texas Instruments filed suit against CGMI, BNY, and Morgan Stanley in the

District Court of Dallas County, Texas, on April 1, 2009.  Notice at 1.  Texas

Instruments' original petition alleged that the three defendants violated the Texas

Securities Act by making false statements and omissions of material fact that resulted

in the plaintiff's purchases of the ARS.  Petition at 10.  Texas Instruments requested

rescission of the purchase of the securities, prejudgment interest, an award of costs

and attorneys' fees, and such other relief to which it might be justly entitled.  *Id.* at

11.

Removal to this court was effected on May 1, 2009.  Notice at 8.  CGMI filed

for removal under 28 U.S.C. § 1441 based on diversity-of-citizenship jurisdiction.

Notice at 1.  Morgan Stanley and BNY consented to the removal.  *Id.* at 6.

Defendants BNY and CGMI are New York corporations, and defendant Morgan

Stanley is a Delaware corporation.  Petition at 2.  The plaintiff, Texas Instruments, is

also a Delaware corporation.  *Id.*  Because a corporation is deemed to be a citizen of

the state in which it is incorporated, 28 U.S.C. § 1332(c)(1), the presence of Morgan

Stanley as a defendant means that, on the face of the petition, diversity of citizenship

is not complete, as required by *Strawbridge v. Curtiss*, 7 U.S. 267 (1806).  However, CGMI argues that Morgan Stanley's citizenship should be disregarded because Texas Instruments improperly joined Morgan Stanley for the sole purpose of destroying diversity.  Notice at 3.

On May 19, 2009, Texas Instruments filed this motion to remand, arguing that removal was improper because there is not complete diversity of citizenship between the parties.  Motion at 1.  Texas Instruments contends that CGMI has failed to prove that Morgan Stanley was improperly joined as a defendant.  *Id.* at 2.  The parties agree that this court lacks subject matter jurisdiction if Morgan Stanley was properly joined as a defendant.

## II. ANALYSIS

### A. Removal Jurisdiction

Title 28 U.S.C. § 1441(a) permits the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  The statute allows a defendant to "remove a state court action to federal court only if the action could have originally been filed in federal court." *Anderson v. American Airlines, Inc.*, 2 F.3d 590, 593 (5th Cir. 1993).  However, the removal statute must be strictly construed because "removal jurisdiction raises significant federalism concerns."  *Willy v. Coastal Corporation*, 855 F.2d 1160, 1164 (5th Cir. 1988); see also *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

Therefore, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Insurance Company*, 810 F. Supp. 748, 750 (N.D. Tex. 1992) (Means, J.); see also *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 108-09 (1941). The party seeking removal bears the burden of establishing federal jurisdiction. *Willy*, 855 F.2d at 1164.

There are two principal bases upon which a district court may exercise jurisdiction after removal: the existence of a federal question, *see* 28 U.S.C. § 1331, and complete diversity of citizenship among the parties, *see* 28 U.S.C. § 1332. Here, CGMI -- the removing defendant -- has alleged only diversity of citizenship as a basis of this court's jurisdiction. The court can properly exercise jurisdiction on the basis of diversity of citizenship after removal only if three requirements are met: (1) the parties are of completely diverse citizenship, *see* 28 U.S.C. § 1332(a); (2) none of the properly joined defendants is a citizen of the state in which the case is brought, *see* 28 U.S.C. § 1441(b); and (3) the case involves an amount in controversy of more than $75,000, *see* 28 U.S.C. § 1332(a). Where diversity of citizenship is incomplete, the removing defendant must show that all of the non-diverse defendants have been improperly joined in the action. *Smallwood v. Illinois Central Railroad Company*, 385 F.3d 568, 572-73 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992 (2005).

The Fifth Circuit has recognized two grounds on which a court can find that a defendant was improperly joined: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"  *Id.* at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).  However, CGMI does not allege that Texas Instruments fraudulently pleaded any jurisdictional facts or that it has failed to state a claim against the non-diverse defendant, Morgan Stanley.  Defendant CGMI's Memorandum in Opposition to Plaintiff's Motion to Remand ("Opposition to Motion to Remand") at 2-3.  Instead, CGMI urges the court to adopt and apply a third test of improper joinder -- commonly referred to as fraudulent misjoinder -- established by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corporation*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated in part on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000).

The Fifth Circuit has never expressly adopted *Tapscott's* theory of fraudulent misjoinder.  *Palermo v. Letourneau Technologies, Inc.*, 542 F. Supp. 2d 499, 515 (S.D. Miss. 2008).  However, it has strongly indicated that it would do so in an appropriate case.  See *Crockett v. R.J. Reynolds Tobacco Company*, 436 F.3d 529, 532-33 (5th Cir.), *cert. denied*, 548 U.S. 907 (2006); *In re Benjamin Moore & Company*, 318 F.3d 626, 630-31 (5th Cir. 2002); *In re Benjamin Moore & Company*, 309 F.3d 296, 298 (5th Cir. 2002); see also *Palermo*, 542 F. Supp. 2d at 515 (S.D. Miss. 2008) ("[M]ost

- 6 -

district courts within this circuit have taken the position that the Fifth Circuit has

adopted, or at least appears to have adopted, *Tapscott*.") (collecting cases).[1]

Therefore, for purposes of this motion to remand, the court will assume -- without so

holding -- that fraudulent misjoinder is a third possible ground to support a finding of

improper joiner.

## B.  Fraudulent Misjoinder

*Tapscott* holds that a court may determine whether it has diversity jurisdiction

without taking into account the citizenship of any parties who have been fraudulently

misjoined.  77 F.3d at 1360.  The Eleventh Circuit reasoned in *Tapscott* that failure to

comply with the joinder requirements of Federal Rule of Civil Procedure 20 can, in

certain limited circumstances, "be just as fraudulent as the joinder of a resident

defendant against whom a plaintiff has no possible cause of action."  *Id.*  However,

the *Tapscott* court cautioned that not every instance of "mere misjoinder" is also an

instance of fraudulent misjoinder.  *Id.*  Only the most "egregious" instances of

misjoinder rise to the level of fraudulent misjoinder: those in which the "wholly

distinct" claims of, or against, the non-diverse parties are so lacking any "real

connection with the controversy" that their joinder "border[s] on a sham."  *Id.*; see

also *Bright v. No Cuts Inc.*, 2003 WL 22434232, at *4 (E.D. La. Oct. 27, 2003)

---

[1]         A number of district courts within this circuit have extensively and
insightfully analyzed the Fifth Circuit's treatment of *Tapscott*.  See, *e.g.*, *Palermo*, 542
F. Supp. 2d at 512-15; *Accardo v. Lafayette Insurance Company*, 2007 WL 325368, at
*2-*3 (E.D. La. Jan. 30, 2007).

("Courts analyzing fraudulent misjoinder claims under *Tapscott* have consistently noted that mere misjoinder does not constitute *fraudulent* misjoinder.") (collecting cases) (emphasis in original).

The holding of *Tapscott* points toward a two-step analysis.  See *Wells Fargo Bank, N.A. v. American General Life Insurance Company*, __ F. Supp. 2d __, 2009 WL 3877516, at *3 (N.D. Tex. Nov. 18, 2009) (Means, J.) (explaining that a motion to remand calls for a "misjoinder inquiry under *Tapscott* that . . . is much broader and more forgiving to Plaintiff than the analysis to be done under the joinder rules with regard to the motion to sever"); *Bright*, 2003 WL 22434232, at *6 ("[The] jurisdictional inquiry is broader than simply whether the joined claims and parties comply with the technical rules of joinder.").  Because any finding of fraudulent misjoinder logically entails an antecedent finding of mere misjoinder, a court first should ask whether any non-diverse parties have been misjoined under the governing joinder rules.  If so, the second step of the analysis should ask whether that misioinder is so egregious as to be fraudulent.[2]

---

[2]      Under this two-step analysis, the cases cited by CGMI in which parties were found to have been misjoined under Federal Rules of Civil Procedure 20 and 21, *see* Notice at 4 and Opposition to Motion Remand at 2 n.1, offer only limited support for its position here.  A finding of procedural or "mere" misjoinder begins -- but does not end -- the inquiry.

The first step of the *Tapscott* analysis tracks the requirements of the relevant state joinder rule -- here, Texas Rule of Civil Procedure 40.[3] Texas Rule 40 provides that defendants may be joined together in the same action only if (1) "there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences;" and (2) at least one "question of law or fact common to all of them will arise in the action." TEX. R. CIV. P. 40(a).[4] In short, it establishes a "same transaction" requirement and a "common question" requirement.[5] Any potential

---

[3] District courts in this circuit and elsewhere have divided over the question of whether the propriety of joinder should be determined by state or federal law. Compare *Accardo*, 2007 WL 325368, at *3 ("The majority of the district courts that have applied *Tapscott* have held that the misjoinder issue should be determined under state joinder law rather than federal joinder law.") (citations omitted), with *In re Silica Products Liability Litigation*, 398 F. Supp. 2d 563, 651-52 n.141 (S.D. Tex. 2005) (applying Federal Rule of Civil Procedure 20). The court will follow the lead of other judges in this district that have concluded that Texas joinder rules should control the analysis. See, *e.g.*, *Wells Fargo Bank*, 2009 WL 3877516, at *6; *Crenshaw v. Sutherland*, 1993 WL 610763 at *2 (N.D. Tex. Oct. 27, 1993) (Fitzwater, J.); *see also* E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine*, 29 HARV. J. L. & PUB. POL'Y 569, 590-606 (2006) (concluding that state joinder rules should apply). For district courts in Texas, this question is largely academic. Texas's joinder rule is identical to its federal counterpart, *Crockett*, 436 F.3d at 533, and Texas courts rely on federal case law interpreting Federal Rule 20 to guide their interpretation of Texas Rule 40, *e.g.*, *Adams v. Baxter Healthcare Corporation*, 998 S.W.2d 349, 358-59 (Tex. App.--Austin 1999, no pet.).

[4] *See also* FED. R. CIV. P. 20(a)(2).

[5] CGMI contends that the language in Texas Rule 40(a) and Federal Rule 20(a)(2)(A) requiring the right to relief to be asserted against the defendants "jointly, severally, or in the alternative" constitutes a third requirement of permissive joinder.

(continued...)

party who does not satisfy both of these requirements may not be joined as a

defendant.  See *Jamison v. Purdue Pharma Company*, 251 F. Supp. 2d 1315, 1322 (S.D.

Miss. 2003) (interpreting Federal Rule 20).  The "same transaction" requirement is

governed by a logical-relationship test that is borrowed from federal law.  *Blalock*

*Prescription Center, Inc. v. Lopez-Guerra*, 986 S.W.2d 658, 663-64 (Tex. App.--Corpus

---

[5](...continued)

*See* Defendant CGMI's Motion to Sever and Supporting Brief ("Motion to Sever") at 2, 4-6; Defendant CGMI's Reply Memorandum in Further Support of its Motion to Sever at 1-3.  This contention is misplaced.  See, *e.g.*, *Lott v. Eastman Kodak Company*, 1999 WL 242688, at *2 (N.D. Tex. April 16, 1999) (Solis, J.) (explaining that only two requirements must be satisfied for permissive joinder under Rule 20(a) (citing 7 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1653 (2d ed. 1986))).  The "jointly, severally, or in the alternative" language does not further limit the scope of permissible joinder beyond what is allowed by the "same transaction" requirement.  To the contrary -- it emphasizes the broad scope of permissible joinder under the Rules.  See, *e.g.*, *Jamison v. Purdue Pharma Company*, 251 F. Supp. 2d 1315, 1323 (S.D. Miss. 2003) ("[T]he defendants' argument that the allegations of the Complaint provide no basis for holding [one defendant] jointly liable with the other defendants overlooks Rule 20's language permitting joinder of persons whose liability is allegedly joint, several, or in the alternative.") (internal quotation marks omitted); see also *G.R.P. Mechanical Company, Inc. v. Kienstra Concrete, Inc.*, 2006 WL 83466, at *2-*3 (S.D. Ill. Jan. 11, 2006) (granting a motion to reconsider an order of severance on the ground that the court had erred in assuming that Rule 20 required either alternative liability or joint and several liability).  Texas Instruments' petition requests rescission of the ARS it purchased from each defendant.  Petition at 11.  A request that each defendant be held liable only for its comparative or proportionate share of the plaintiff's damages is a request that the defendants be held severally liable.  See *G.R.P. Mechanical Company*, 2006 WL 83466, at *3 (defining "several liability" as "'liability that is separate and distinct from another's liability, so that the plaintiff may bring a separate action against one defendant without joining the other liable parties.'" (quoting BLACK'S LAW DICTIONARY 933 (8th ed. 2004)).

Christi 1998, no pet.).[6]  The "common question" requirement does not mean that

multiple questions of law or fact must be common among the parties; it is satisfied by

the presence of a solitary common question.  See *Jamison*, 251 F. Supp. 2d at 1323

(interpreting Federal Rule 20 (citing 7 CHARLES ALAN WRIGHT ET AL., FEDERAL

PRACTICE AND PROCEDURE § 1653 (3d ed. 2002))).  Texas Rule 40 is interpreted in

light of a state policy that encourages broad joinder of multiple parties in the same

action.  *In re E.L.P.*, 636 S.W.2d 579, 581(Tex. App.--San Antonio 1982, no writ).[7]

If a party has been procedurally misjoined, the second step of the *Tapscott*

analysis asks whether that misjoinder is fraudulent.  Fraudulence is measured against

a standard of egregiousness.  *Tapscott*, 77 F.3d at 1360.  *Tapscott* held that the

misjoined parties and claims must be "wholly distinct" and have "no real connection"

to each other, such that their joinder is "bordering on a sham."  77 F.3d at 1360.

Other courts have opined that misjoinder is egregious if "it is grossly improper, totally

unsupported, and lacks any colorable basis," *Palermo*, 542 F. Supp. 2d at 525 n.7, if

---

[6]      See also *Coll v. Abaco Operating LLC*, 2009 WL 2857821, at *2 (E.D. Tex. Sept. 1, 2009) ("The district courts in the Fifth Circuit have used the 'logical relationship' analysis in determining whether the factual situation constitutes a transaction, occurrence, or series of transactions or occurrences for purposes of Rule 20.") (collecting cases).

[7]      See also *Battison v. City of Electra*, 2001 WL 497769, at *1 (N.D. Tex. May 08, 2001) (Buchmeyer, C.J.) (explaining that Federal Rule 20(a) should be interpreted in light of the Supreme Court's instruction that "'joinder of claims, parties and remedies is strongly encouraged'" (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966))).

- 11 -

the claims are "wholly unrelated," *Wessel v. Miraglia*, 2004 WL 1943776, at *2 (N.D.

Tex. Aug. 31, 2004) (McBryde, J.), or if the relationship between the claims is "so

tenuous" that they lack any "'palpable connection,'" *Lundquist v. J&J Exterminating,*

*Inc.*, 2008 WL 1968339, at *3 (W.D. La. May 2, 2008) (quoting *Bright*, 2003 WL

22434232 at *5).  But these formulations do more to restate the test than they do to

explicate it.  In the nearly fourteen years since *Tapscott* was decided, no generally

applicable standard has been formulated to guide the determination of when

misjoinder is so egregious as to be fraudulent.  A survey of the cases from this circuit

which have considered the question suggests that misjoinder is so egregious as to be

fraudulent only in the following three situations:  (1) two or more lawsuits with little

or no party overlap have been combined in the same action (*i.e.*, there are multiple

plaintiffs and defendants, but each plaintiff or discrete set of plaintiffs is suing only

one defendant or a discrete set of defendants); (2) numerous plaintiffs have sued a

common defendant and assert claims that have no shared factual element other than

the presence of the common defendant; and (3) a single plaintiff or group of plaintiffs

has joined multiple defendants in the same action and is asserting claims against each

defendant that are both factually and legally unrelated.

Tapscott typifies the first type of case that can support a finding of fraudulent

misjoinder.  There, "two entirely distinct lawsuits had been merged into one." *Johnson*

*v. Glaxo Smith Kline*, 214 F.R.D. 416, 420 (S.D. Miss. 2002).  Specifically, one class

of plaintiffs ("the automobile plaintiffs") sued one group of defendants ("the automobile defendants") on claims arising out of the sale of automobile service contracts. *Tapscott*, 77 F.3d at 1355. The plaintiffs later amended their complaint so that a second class of plaintiffs ("the retail plaintiffs") was suing a second group of defendants ("the retail defendants") on claims arising out of retail-product service contracts. *Id.* The two classes of plaintiffs and defendants did not overlap at all: the automobile plaintiffs were only asserting claims against the automobile defendants, and the retail plaintiffs were only asserting claims against the retail defendants. The removing defendant, Lowe's Home Centers ("Lowe's"), was one of the retail defendants. *Id.* The retail defendants were diverse from the retail plaintiffs, but one of the automobile defendants was not diverse from the retail plaintiffs. *Id.* at 1359-60. Diversity was incomplete only because the plaintiffs had joined two wholly distinct lawsuits in the same civil action; had the action been severed, no party would have been participating in both cases post-severance. The misjoinder was so egregious that the plaintiffs did not even attempt to defend it. *Id.* at 1360. In that circumstance, the Eleventh Circuit held that the plaintiffs' misjoinder of the defendants in the same action was fraudulent. *Id.*

The facts were similar in *Accardo v. Lafayette Insurance Company*, 2007 WL 325368 (E.D. La. Jan. 30, 2007), a case on which CGMI relies. There, each of eighteen citizens of Louisiana had sued one of six insurance companies for breach of a

homeowners insurance policy.  *Id.* at *1.  No plaintiff sued more than one defendant, and sixteen of the plaintiffs were diverse from the insurance company they were suing; only one of the six insurance companies was not diverse from the plaintiffs.  *Id.* The claims arose out of damage to each plaintiff's home suffered during Hurricane Katrina.  *Id.*  Each plaintiff owned a different piece of property, and there was no allegation of joint action by the defendants.  *Id.* at *5.  The court concluded that the case was "most properly viewed as eighteen separate actions, each with its own particular facts," and held the claims were fraudulently misjoined.  *Id.* at *5.[8]

The second type of case in which a finding of fraudulent misjoinder is warranted involves only the misjoinder of plaintiffs.  The district courts of this circuit appear to have adopted the view, first suggested by an MDL court, that the threshold for finding that plaintiffs have been fraudulently misjoined should be lower than the threshold for finding that defendants have been fraudulently misjoined.  See *In re Rezulin Products Liability Litigation*, 168 F. Supp. 2d 136, 147 (S.D.N.Y. 2001) ("Arguably a plaintiff's right to choose among defendants and claims -- the principal reason for imposing a strict standard of fraudulent joinder to effect removal -- is not compromised where claims of co-plaintiffs are severed or dismissed."); see also *In re*

---

[8]     See also *Wells Fargo Bank,* 2009 WL 3877516, at *6-*7 (finding that a defendant had been fraudulently misjoined where "none of the plaintiffs who [sought] recovery against" it sought "recovery from any other defendant on the same claim" and the procedural history of the case indicated a deliberate effort by the plaintiff to use joinder to defeat federal jurisdiction).

*Benjamin Moore*, 309 F.3d at 298 ("[I]t might be concluded that misjoinder *of plaintiffs* should not be allowed to defeat diversity jurisdiction.") (emphasis added).  For example, in *Coleman v. Conseco*, 238 F. Supp. 2d 804, 819 (S.D. Miss. 2002), *abrogated in part on other grounds by Sweeney v. Sherwin Williams Company*, 304 F. Supp. 2d 868 (S.D. Miss. 2004), forty-eight plaintiffs from fifteen different states sued an insurance company and several of its agents on various fraud claims.  *Id.* at 808 n.2, 810-11.  Each plaintiff's case was based on a different alleged instance of fraud.  *Id.* at 817.  The court found that the non-diverse plaintiffs' claims had "occurred in complete factual, temporal and geographic isolation from the claims of the" diverse plaintiffs and that the case thus did not arise out of the same series of transactions or occurrences as required by Federal Rule 20.  *Id.* at 818-19.  The court concluded that the plaintiffs had been fraudulently misjoined.  *Id.* at 819.[9]

Other cases cited by CGMI exemplify the third type of case that will support a finding of fraudulent misjoinder.  In both *Nsight Technologies, LLC v. Federal Insurance*

---

[9]       For additional examples of cases in which courts have concluded that plaintiffs were fraudulently misjoined, see *In re Silica*, 398 F. Supp. 2d at 651 (concluding that, "for jurisdictional purposes, the joinder of the disparate Plaintiffs' claims constitutes egregious misjoinder, while each Plaintiffs' joinder of his or her claims against multiple Defendants does not constitute egregious misjoinder"); see also *Reed v. American Medical Security Group, Inc.*, 324 F. Supp. 2d 798, 803-05 (S.D. Miss. 2004) (finding that fourteen "unrelated plaintiffs suing over unconnected events" had fraudulently misjoined their claims); *Adkins v. ametek*, 2003 WL 24011960, at *2 (S.D. Miss. Jan. 28, 2003) (finding that the claims of a large group of plaintiffs asserting factually unrelated asbestos claims had been fraudulently misjoined).

*Company*, 2009 WL 1106868, at *5 (S.D. Miss. April 23, 2009), and *Palermo*, 542 F. Supp. 2d at 524-25, a single plaintiff or group of plaintiffs had joined multiple defendants in the same action and was asserting claims against the various defendants that were both factually and legally unrelated.[10]  In *Nsight*, a company sued its former employee for conversion, alleging she had embezzled company funds.  2009 WL 1106868 at *1.  In the same action, the company also sued its insurer for bad-faith breach of an employee-theft insurance policy.  *Id.*  The court found that the conversion claim and the breach-of-contract/bad-faith claim arose "out of separate allegations of wrongdoing occurring at separate times" and thus found held that the claims against the diverse insurer and the non-diverse former employee had been fraudulently misjoined.  *Id.* at *4 (citation and internal quotation marks omitted). The court emphasized that the two claims raised different factual issues, turned on different legal issues, and would be proved by different evidence.  *Id.*

_____

[10]      It is not enough for the claims to be *either* legally unrelated *or* factually unrelated *but not* both.  In cases in which a single plaintiff or group of plaintiffs asserts different causes of action against various defendants, courts have declined to find that the defendants are fraudulently misjoined where the plaintiff's various claims involve common operative facts.  See, *e.g.*, *Richmond v. Chubb Group of Insurance Companies*, 2006 WL 2710566, at *6 (E.D. La. Sept. 20, 2006) (finding that the plaintiffs' claims of negligence and breach of fiduciary duty against the agents who sold them an insurance policy were not fraudulently misjoined with their failure-to-pay claim against the insurance company that issued the policy); *Moore v. SmithKline Beecham Corporation*, 219 F. Supp. 2d 742, 745-46 (N.D. Miss. 2002) (finding that a products-liability claim against a drug manufacturer was not fraudulently misjoined with a medical-negligence claim against a nurse practitioner where both claims arose out of the plaintiffs' use of the same drug).

*Palermo* also involved the joinder of legally and factually unrelated causes of action against distinct groups of defendants.  In that case, a former employee and his wife sued two sets of defendants.  Their claims against each set of defendants were legally unrelated.  They alleged wrongful discharge, simple negligence, slander, and intentional infliction of emotional distress against the former employer and its agents ("the employer defendants"), and they alleged medical-negligence and product-liability claims against a group of health-care professionals and companies ("the medical defendants).  542 F. Supp. 2d at 504-05.  The claims were also factually unrelated.  The claims against the employer defendants arose out of the former employee's termination from his job, and the claims against the medical defendants arose out of a surgical procedure the employee underwent after being injured on the job.  *Id.* at 524.  The court concluded that the plaintiffs could not have reasonably believed that the claims were properly joined and thus held they had been fraudulently misjoined.  *Id.* at 525.[11]

---

[11]      See also *Willingham v. State Farm Insurance Company*, 2009 WL 2767679, at *1, *4-*5 (N.D. Miss. Aug. 27, 2009) (finding that a failure-to-pay claim against an insurance company was fraudulently misjoined with a breach-of-warranty claim against a homebuilder); *Milliet v. Liberty Mutual Insurance Company*, 2008 WL 147821, at *1, *3 (E.D. La. Jan. 11, 2008) (same); *Frankland v. State Farm Fire & Casualty Company*, 2008 WL 4072819, at *1, *5 (W.D. La. July 2, 2008) (finding that a failure-to-pay claim against an insurance company was fraudulently misjoined with a claim against an insurance adjuster seeking rescission of a contract); *Energy Royalties Corporation v. Denbury Onshore, LLC*, 2008 WL 907537, at *3 (S.D. Miss. March 31, 2008) (finding that a claim against an oil-drilling company for unpaid royalties was fraudulently misjoined with an action to clear title brought against a

(continued...)

These three fact patterns appear to mark the outer limits of *Tapscott's*
fraudulent-misjoinder principle.  In all other circumstances, the district courts of this
circuit have rejected claims of fraudulent misjoinder and granted motions to
remand.[12]  Specifically, when a single plaintiff or group of plaintiffs asserts the same

---

[11](...continued)
group of former royalty-interest assignees); *Berthelot v. Boh Brothers Construction
Company*, 2006 WL 1984661, at *1, *11-*12 (E.D. La. June 1, 2006) (finding that a
tort claim against a municipal entity was fraudulently misjoined with contract claims
against various insurance companies); *Juneau v. Ducote*, 2005 WL 2648861, at *1, *3-
*4 (W.D. La. Oct. 17, 2005) (finding that a statutory claim for access to business
records against a former employer was fraudulently misjoined with a personal-injury
claim against the operator of a battery recycling plant); *Jones v. Nastech Pharmaceutical*,
319 F. Supp. 2d 720, 728 (S.D. Miss. 2004) (finding that an in-state defendant
against whom only one of five plaintiffs asserted any claim had been fraudulently
misjoined); *Smith v. Nationwide Mutual Insurance Company*, 286 F. Supp. 2d 777, 778,
781 (S.D. Miss. Sept. 29, 2003) (finding that a personal-injury claim against a driver
was fraudulently misjoined with a claim that the plaintiffs' insurance company had
failed to pay medical bills).

[12]      See, *e.g.*, *Allen v Kuhlman Corporation*, 2009 WL 2382196, at *2 (S.D
Miss. July 31, 2009); *Cooper v. AIG Claim Services, Inc.*, 2009 WL 279101, at *3
(N.D. Miss. Feb. 5, 2009); *Lundquist*, 2008 WL 1968339, at *4-*5; *Moote v. Eli Lilly
and Company*, 2006 WL 3761907, at *2-*3 (S.D. Tex. Dec. 21, 2006); *Rice v. Pfizer,
Inc.*, 2006 WL 1932565, at *3-*4 (N.D. Tex. July 7, 2006) (Lynn, J.); *Schuchmann v.
Miraglia*, 2004 WL 2626532, at *3-*4 (N.D. Tex. Nov. 16, 2004) (Boyle, J.); *Walton
v. Tower Loan of Mississippi*, 338 F. Supp. 2d 691, 695-97 (N.D. Miss. 2004); *Wessel*,
2004 WL 1943776, at *3; *Barron v. Miraglia*, 2004 WL 1933225, at *2 (N.D. Tex.
Aug. 30, 2004) (McBryde, J.); *Duffin v. Honeywell International, Inc.*, 312 F. Supp. 2d
869, 872-73 (N.D. Miss. 2004); *Ross v. Life Investors Insurance Company of America*, 309
F. Supp. 2d 842, 850 (S.D. Miss. 2004); *Burrell v. Ford Motor Company*, 304 F. Supp.
2d 883, 889-90 (S.D. Miss. 2004); *Sweeney v. Sherwin Williams Company*, 304 F.
Supp. 2d 868, 875 (S.D. Miss. 2004); *Bright*, 2003 WL 22434232, at *6; *Jamison*,
251 F. Supp. 2d at 1323; *Terrebonne Parish School Board v. Texaco, Inc.*, 1998 WL
160919, at *3 (E.D. La. Apr. 3, 1998); *Marble v. American General Life and Accident
Insurance Company*, 996 F. Supp. 571, 574-75 (N.D. Miss. 1998); *Ren-Dan Farms, Inc.*
(continued...)

cause of action against all of the defendants in a case, there is no basis to claim the defendants have been fraudulently misjoined.  See, *e.g.*, *Terrebonne Parish School Board*, 1998 WL 160919 at *3.  In *Terrebonne*, a single plaintiff sued four oil-and-gas companies for damages allegedly caused during drilling operations.  *Id.* at *1.  Each defendant signed its own contract with the plaintiff, and the drilling operations spanned a period of thirty-three years.  *Id.*  The wells were drilled at different locations on the property, and there was no allegation of joint action.  *Id.* Nonetheless, the court found that the drilling of the four wells on the property constituted a series of transactions or occurrences and rejected the claim of fraudulent misjoinder.  *Id.* at *3.  See also *Schuchmann*, 2004 WL 2626532, at *3-*4 (concluding that a finding of fraudulent misjoinder was not warranted where the plaintiff asserted a defamation claim against every defendant, "even if the Defendants did not act in concert"); *Touro Infirmary v. American Maritime Officer*, 2007 WL 4181506, at *8 (E.D. La. Nov. 21, 2007) (declining to find that more than twenty-five insurance companies were fraudulently misjoined as defendants where the plaintiff alleged the same statutory cause of action against each defendant); *Marble*, 996 F. Supp. at 574(upholding the joinder of multiple insurance companies as defendants in an insurance-fraud action brought by a single plaintiff alleging that "separate policies" purchased at "separate times" were improperly issued).

---

[12](...continued)
*v. Monsanto Company*, 952 F. Supp. 370, 375-76 (W.D. La. 1997).

In sum, district courts within this circuit have considered numerous cases removed from state court on the basis of allegedly fraudulent misjoinder, and the overwhelming majority of those cases have been remanded to state court, often on the ground that even if the parties have been misjoined, such misjoinder is not so egregious as to be fraudulent.[13]  Empirically speaking, a finding of fraudulent misjoinder has proven to be a disfavored basis for a district court's exercise of jurisdiction after removal, and it is reserved for a very small handful of the most extreme cases.  See also *Moore*, 219 F. Supp. 2d at 745 ("District courts within the Fifth Circuit . . . have repeatedly distinguished and declined to follow *Tapscott*.").

In this case, the court finds that CGMI has not established that Texas Instruments fraudulently misjoined Morgan Stanley as a defendant.  The first step of the two-step *Tapscott* analysis asks whether Morgan Stanley has been "merely" misjoined in violation of Texas Rule of Civil Procedure 40.  Here, the court does not find that Morgan Stanley's joinder as a defendant was in violation of Texas Rule 40.[14]

---

[13]      See, *e.g.*, *Touro Infirmary*, 2007 WL 4181506, at*8 ("Whether or not joinder of these claims is ultimately proper, at this time, it does not appear that the joinder of these claims rises to the 'egregious' level required by *Tapscott*."); *Turner v. Murphy Oil USA, Inc.*, 2007 WL 2407310, at *6 (E.D. La. Aug. 20, 2007) (same); *Richmond*, 2006 WL 2710566, at *6 (same); *Schwartz v. Chubb & Sons, Inc.*, 2006 WL 980673, at *5 (E.D. La. Apr. 11, 2006) (same); *Jackson v. Truly*, 307 F. Supp. 2d 818, 824 (N.D. Miss. 2004) (same); *Moore*, 219 F. Supp. 2d at 746 (same); *Johnson*, 214 F.R.D. at 421(same).

[14]      To be clear, the court also does not find that Morgan Stanley's joinder as a defendant was proper under Texas Rule 40.  The procedural joinder question is a
(continued...)

As to Texas Rule 40's "common question" requirement, CGMI does not dispute that Texas Instruments' claims against each defendant raise common questions of law under the Texas Securities Act.  *See* Motion to Sever at 4.  As to the "same transaction" requirement, "courts are inclined to find that claims arise out of the same transaction or occurrence when" there is a "likelihood of overlapping proof and duplication in testimony."  *In re Silica*, 398 F. Supp. 2d at 650; see also *Lott*, 1999 WL 242688, at *3 ("Absolute identity of all events is unnecessary.").  Under Texas law, Texas Instruments' overall level of knowledge about ARS is relevant to the claims it raises against each of the three defendants.  See *In re Westcap Enterprises*, 230 F.3d 717, 726 (5th Cir. 2000) (acknowledging that "Texas courts look to . . . the relative knowledge of the speaker and recipient" when considering whether a particular misrepresentation is actionable under the Texas Securities Act).  Any representations, misrepresentations, or omissions about ARS made by any defendant would affect Texas Instruments' relative level of knowledge in its dealings with all defendants.  Thus, any statements made by one of the defendants to Texas Instruments about ARS could be used to prove Texas Instruments' level of knowledge not only relative

---

[14](...continued)
question for the Texas district court in the first instance.  *Crenshaw*, 1993 WL 610763, at *2.  The court only notes here that there is a reasonable possibility that the defendants' joinder in this action was not in violation of Texas Rule 40.  Cf. *Moore*, 219 F. Supp. 2d at 744 (clarifying that a court that is performing a Rule-12(b)(6)-style fraudulent-joinder analysis "does not focus on whether the Plaintiffs will prevail on the merits of their claims" but instead "simply determines whether there is a possibility that the Plaintiffs will be able to state a claim").

to that defendant but also relative to the other two defendants.  See generally *Air Liquide America Corp. v. Crain Brothers, Inc.*, 11 F. Supp. 2d 709, 716 n.13 (S.D. Tex. 1997) (noting the rule that out-of-court statements offered to show their effect on the state of mind of the listener, such as to establish notice or knowledge, are admissible non-hearsay) (citing F.R. EVID. 803).  Therefore, the court does not conclude that the joinder of Morgan Stanley as a defendant in this action was improper under Texas Rule of Civil Procedure 40.

Even assuming for the sake of argument that Morgan Stanley has been misjoined, that misjoinder is not so egregious as to be fraudulent.  Texas Instruments' claims against the three defendants in this case are both legally and factually related: they arise under the same law and pertain to a series of transactions involving the same financial instrument.  Further, the facts of this case do not present any of the three circumstances that the district courts of this circuit have concluded can support a finding of egregious misjoinder.  There are not two distinct classes of plaintiffs and defendants.  Multiple plaintiffs have not joined together to sue the same defendant. The same plaintiff is not alleging different causes of action against different defendants.  Rather, Texas Instruments has alleged that each of the three defendants violated the Texas Securities Act by making untrue statements of fact and by failing to state material facts in connection with its sales of ARS.  Where, as here, a lone plaintiff alleges the same cause of action against every defendant based on a similar or

overlapping set of facts, no authority supports the conclusion that the defendants have been egregiously misjoined.  As a result, the court finds that Texas Instruments did not fraudulently misjoin Morgan Stanley as a defendant.

### III.  CONCLUSION

For the reasons discussed above, the motion to remand is **GRANTED**, and the motions to sever are **DENIED** as moot.

**SO ORDERED**.

March 1, 2010.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**